NEW-YORK PRACTICE REPORTS. 549

Hecker agt. The New-York Balance Dock Co.

## SUPREME COURT.

### JOHN and GEORGE V. HECKER agt. THE NEW-YORK BALANCE DOCK COMPANY.

*Floating docks* in the harbor of New-York, for the purpose of repairing ships and vessels, must be regulated in their structure, fixed in their location, their duties prescribed, and their tolls limited, by the *legislature* of the state They are in their very nature a *monopoly*—an exclusive appropriation to the few, of rights belonging equally to the many.

The setting up of a *monopoly*, unless sanctioned by the legislature, is, in law, a *nuisance*.

By the act of April 16, 1830, the common council of the city of New-York were authorized to pass ordinances designating from time to time, particular wharves, piers and slips, for the particular use of particular classes or descriptions of *ships* or *vessels*.

Now, a *floating dock* is not a ship or vessel in any sense within such ordinances; being moored to one place, it necessarily becomes a stationary structure.

Consequently, the common council, and much less a dock-master, an officer of their own creation, have no authority to grant the claims of a floating dock company, permanently to monopolize a large portion of a number of the public slips, forming part of a great maritime highway, and indirectly, without law, to levy tolls for their special use.

Even if these floating docks could be classed as *ships* or *vessels*, within the meaning of the ordinances, there is no authority for the common council, or the dock-master, to give them an exclusive privilege as a *permanent, stationary fixture*. They can not do this with ships or vessels. (*See Penniman agt. The New-York Balance Co., ante p.* 40.)

In this case, the floating dock of the defendants, stationed in Pike Slip, East River, *held* to be, in legal contemplation, a public nuisance, and causing special injury to the plaintiffs' property. It was ordered to be removed within six months after due notice given.

*New-York Special Term, April,* 1857.

APPLICATION for judgment to abate a nuisance, and for an injunction.

The facts will appear in the opinion of the court.

D. DUDLEY FIELD, *for plaintiffs*
SAMUEL J. TILDEN, *for defendants.*

ROOSEVELT, Justice.   The plaintiffs, who are the owners of the Croton Mills, and a large amount of other real estate in the neighborhood of Pike Slip, on the East River, complain that the defendants, about a year ago, stationed in the slip a floating dock, permanently secured to one of the piers, greatly incommoding the plaintiffs' business, increasing the expense of cartage, and impairing the value of their property, and they ask for a judgment of the court to abate " the said nuisance," as they call it, and to restrain the defendants, by injunction, from further obstructing or incumbering " the said basin, or said bulkheads, or piers."

The dock company, in their answer, among other things, deny that their works are an obstruction to the public highways, or that they are a public nuisance; or that they are " productive of great injury to the plaintiffs or any other citizens;" on the contrary, they insist that their occupation for the lifting, raising and sustaining vessels which require repairs, is a " lawful commercial use of the pier, basin and bulkhead."

On the trial, which consumed the larger portion of a week, a great number of ship-owners, mechanics, and other persons, were examined as witnesses on both sides of the controversy : the result of whose testimony shows clearly that the dock, to some extent, is the cause of special injury to the Messrs. Hecker, for which, if it be a public nuisance, not authorized by law, they have a special right, individually, on their own separate behalf, to ask relief at the hands of the court.   For although a public nuisance may be abated by anybody, and without suit, (5 *Rep*. 101—*Cro. Car.* 184,) the more orderly mode is by application to the courts and the officers of the law.   The question, then, to be determined is, whether the dock of the defendants, moored and permanently established in one of the public slips, is, in legal contemplation, a public nuisance.

To place a floating dock *in the river*, it is said, in a note to *Hawkins Pleas of the Crown*, (*vol.* 2, *chap.* 75, § 11,) although beneficial in repairing ships, is a common nuisance., So a common wagoner, however useful and necessary may be his occu-

pation, who continually obstructs the passage of a street in the exercise of his business, may be indicted as a nuisance. (6 *East's Reports*, 427.)

Where the inhabitants of a town had, by custom, a watering place in common for their cattle, which was stopped by another, it was held (5 *Rep.* 73, 9 *id.* 103) that any one inhabitant might have an action against the usurping individual as for a nuisance. In the case of *Corning & Lowerre*, (6 *Johnson's Ch. Rep.* 439,) an injunction was granted, as for a nuisance, against a person who was erecting his house partly on the street, to the prejudice of the common right of an adjoining owner.

The evidence in the present case shows that the business of the defendants, although highly beneficial to the commerce of the port, is, in fact and in its very nature, a monopoly. It is an exclusive appropriation to the few of rights belonging equally to the many.

The slip is part of the common highway. It is a continuation either of the street or of the river. The piers are its incidents, and necessary to its enjoyment, as a place for loading and unloading. The case, therefore, comes within the authorities cited, in both respects—as a land highway and as a water highway. It is a permanent exclusive appropriation by the defendants of the south half of the pier and the north half of the slip. No vessel can enter to load or discharge, or for any other purpose, except to repair, and then only on paying such toll as the defendants may see fit to prescribe. And the same impediment which obstructs the access of vessels to the pier, obstructs the cartage to and from the vessels. A monopoly is thus, in effect, established for one use and for one person.

The assumption of a franchise or exclusive privilege, or, in other words, the setting up of a monopoly, unless sanctioned by the legislature, is, in law, a nuisance. The recent case of the Ninth avenue railroad, (3 *Abbott*, 262,) decided at general term, is a direct authority to that effect.

Now, the defendants do not pretend to hold a legislative grant. They do not possess even an ordinance of the common council. Their only warrant, as the proof shows, is the per-

mit, and that not in writing, of a dock-master—an officer "legally authorized," the answer alleges, "to assign ships and other vessels to berths and locations," but certainly not intrusted with the sovereign power of granting monopolies. The object of the dock-master's office, however much perverted, is to secure, not to sell or infringe, the equal rights of all ; to pre-·vent encroachments, and not to create or defend them. His duty is to see, from time to time, that equal justice is done between contending applicants, and not to relieve himself from recurring labor by assigning the whole, or the greater part of a slip, at once and forever to a particular favorite.

It is obvious, besides, that a floating dock, immovable except in a perpendicular sense, could never have been intended to be embraced in the terms " ships or vessels." The whole scope of the ordinance shows that those words had reference to steamers and sailing craft, whether small or large, which had occasion to load and unload freight or passengers, and which were constantly coming and going. A floating dock, firmly moored to one place, is a stationary structure. It rises and falls with the tide, but has no horizontal motion. By a bold figure of speech, and a figurative sense, it may, perhaps, be called a vessel, as the human structure itself, in the same manner, is also sometimes designated by that appellation. But the dock is no more a vessel, *in the sense of the ordinance,* than the man or the woman. And even if it could be so considered, no officer, as was held by Judge MITCHELL, in the case of another of these docks, (13 *How.* 40,) has the power to allow even a ship to lie permanently in any place needed for the accommodation of vessels in active employment.

Floating docks are, no doubt, needed. They must be moored somewhere. The evidence shows that they can be placed elsewhere in the harbor, without injuriously obstructing the ordinary operations of loading and unloading.

Other locations, perhaps, may, in some respects, be less convenient. That is a consideration, however, to be brought, not to the courts, but to the legislature—the body which alone represents, and which, to attain a greater good, can alone,

within certain limits, regulate and even waive the common rights. All that a judge can do is to pronounce upon the claims of the defendants under the law as it stands—those claims permanently to monopolize a large portion of a number of the public slips, forming part of a great maritime highway, and, indirectly, without the sanction, and without the safeguards of law, to levy such tolls for a special use as the dock company may see fit to exact, cannot be sustained. And above all, the plea of a dock-master's fiat as the warrant for their commencement and continuance, can never be accepted. The despotism, as it is, is sufficiently obnoxious—extended to the proposed limits, it would be intolerable. Even the common council have no such power. By the act of April 16, 1830, they were authorized to pass ordinances designating, from time to time, particular wharves, piers and slips, for the particular use " of particular *classes* or *descriptions* of ships or vessels." But no authority was given to favor one particular ship or vessel to the prejudice of every other of the same class. So that, even were we to regard a floating dock as a ship or vessel, the common council would have no power to give it an exclusive privilege as a permanent stationary fixture. But a dock, as we have seen, is not a ship or vessel, and the common council, as its ordinances show, have exercised no such power, and made no such grant. Shall one of their subordinate officers, then, be permitted to assume a jurisdiction which his superiors do not claim? The late report in the legislature of the state, on the subject of harbor-masters, is not calculated to encourage advances in that direction. Nor is there anything in the history of monopolies in general to make it proper that courts should particularly favor them. Their natural tendency is to generate corruption, which, in its turn, accelerates the growth of its parent. Even in royal hands, the power was found too great for human virtue. In the reign of Queen Elizabeth, its exercise had become so ruinous, and had attained, as the law-books tell us, such " an enormous height," that parliament, at length, was compelled to interpose, and to declare that all monopolies, however sanctioned, except in certain special enumerated cases,

unless granted by express statute, should be null and void. (21 *James I. ch.* 3.)

If a dock-master may grant the exclusive use of one pier and slip, he may also of another, and another, until the whole, if properly applied for, shall have been parceled out to his liberal favorites, who will then be invested with the sole privilege of repairing all the ships and vessels in the harbor of New-York, with no restraint as to price, except 'such as their own interest may dictate. Eleven such exclusive appropriations, by dock-masters' fiats, have already taken place, and some millions of property, it is suggested, are thus depending on a dock-master's will.

We may well ask, Can this be law? Can it be, that the common rights of all may be thus invaded? or the special rights (if rights they be) of the law thus secured? To answer the question, it would seem, needs only to state it.

I have delayed the decision of this case in the hope that the whole subject of floating docks in the harbor of New-York would be brought before the legislature, which has been in session for the last three months. To that body, as already stated, it properly belongs to allow and regulate such structures, to fix their location, to prescribe and define their duties, and to limit the tolls they may exact.

The officers of the company not having seen fit to make any application in that quarter, the court has no alternative but to apply the law as it stands, and to direct a decree to be entered for the removal of the defendants' dock within six months after due notice given, but without costs to either party.